Filed 7/29/16  P. v. Smith CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MITCHELL BERNARD SMITH,<br><br>        Defendant and Appellant. | A144829<br><br>(San Francisco County<br>Super. Ct. No. SCN221759) |

Defendant was sentenced to state prison for an aggregate term of nine years after a jury found him guilty of felony second degree robbery and misdemeanor assault, and the trial court found true enhancement allegations concerning prior convictions.  On this timely appeal, he presents one claim of erroneously admitted evidence, and two claims of instructional error.  We conclude defendant's contentions are without merit, and affirm.

**BACKGROUND**

On a November evening in 2013, Daniel Acevedo emerged from the Civic Center BART Station and began walking home through the Tenderloin district of San Francisco. He was carrying a laptop computer in a case and listening to music on the earphones of his iPhone, which was in his back pocket of his trousers.  Sensing he was being followed, Acevedo turned suddenly and confronted defendant, a Black male whom he repeatedly and positively identified in court, and whose face he took pains to record in his memory. They grappled for possession of Acevedo's iPhone.  Acevedo observed three men across the street run over and join defendant in pummeling him.

1

Eventually, possession of both the bag and the phone were gained by the attackers, who began walking towards the Civic Center BART Station. Within two minutes, Acevedo was at a nearby store, where he called police. Officers arrived at the store within minutes. Acevedo gave them information that allowed police to locate his iPhone. A description provided by Acevedo was broadcast by police. On the basis of broadcast, officers spotted and detained defendant, who was carrying Acevedo's computer case, near the Civic Center BART station. Acevedo's phone was discovered in the pocket of defendant's jacket.

Within 10 minutes of calling police, Acevedo was taken to look at a "suspect," whom Acevedo identified as defendant, one of the persons who had robbed him. At the police station Acevedo identified the computer case and phone as his.

## REVIEW

Chronologically, the first error identified by defendant is framed in his opening brief as follows: "The impermissibly suggestive cold show identification procedure resulted in insufficient evidence that the trial identification made was sufficient to support appellant's convictions and violated appellant's fourteen[th] amendment right to due process." But testimony from defendant and then Officer James Horan concerning the identification, and the antecedent circumstances, of the field identification procedures, did not elicit an objection by the defense on the ground now advanced by defendant. Because of the absence of a timely and specific objection, the issue was not preserved for review. (Evid. Code, § 353, subd. (a); *People v. Cunningham* (2001) 25 Cal.4th 926, 989 [rule applied to identifications claimed to be impermissibly suggestive].)

Defendant hopes to avoid this conclusion with the trial testimony of Dr. Geoffrey Loftus, whom defendant describes as "a well-known identification expert," who "testified for the defense about the deficits of the cold show identification procedures and how eyewitness memory is effected by various factors." Or, as defense asserts at another place, "Dr. Loftus clearly demonstrated the unreliability and bias of the pre-trial identification. Thus the contention that the pre-trial identification was unreliable and biased is properly before the court." But Dr. Loftus could not testify on the constitutional

2

issue of whether the lineup was unduly suggestive.  (See *People v. Jones* (2013) 57 Cal.4th 899, 950 [Experts may not testify to legal conclusions.].)  At best, his testimony might present the jury with an issue of fact, which by definition could go either way.  (See *Foster v. California* (1969) 394 U.S. 440, 442, fn. 2 ["The reliability of properly admitted eyewitness identification . . . is a matter for the jury."].)  In other words, Dr. Loftus's testimony could go only to the weight of the evidence on identification, not its admissibility.  (See *People v. Boyer* (2006) 38 Cal.4th 412, 480–481.)  The legal issue of admissibility could only be decided by the court, ordinarily accomplished with an evidentiary hearing conducted in accordance with Evidence Code section 402, as apparently occurred in *People v. Morrow* (1969) 276 Cal.App.2d 700, on which defendant relies.  Only then would the prosecution's identification evidence be kept from the jury.  Dr. Loftus's testimony cannot make good the failure to comply with the statutory procedure for preserving this issue for appellate review.

Defendant next contends, again quoting from the caption in his brief:  "Denying appellant's request for instruction of third party culpability was reversible error when it violated appellant's constitutional rights to due process and trial by jury."  The ensuing argument in the brief establishes that defendant is complaining about the trial court declining to use a pinpoint instruction submitted by defendant which the court refused, on two grounds:  (1) "There is no substantial evidence to instruct the jury on third party culpability," and (2) "We are giving CALCRIM 220 on reasonable doubt, and [CALCRIM] 373 on other perpetrators.  The *proposed* third party culpability instruction does not add anything more to these instructions . . . .  therefore, . . . I'm denying the pinpoint instruction."  (Italics added.)

However, because defendant did not include in the record on appeal the text of the denied instruction, its actual language cannot be evaluated.  Thus, defendant cannot disprove the trial court's statement that the substance of "proposed . . . pinpoint instruction" was not covered by other instructions, which constitutes a legitimate reason for refusing to use a special instruction.  (See *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 99 [" 'a trial court need not give a pinpoint instruction if it . . . merely

3

duplicates other instructions' "].)  Accordingly, he fails to demonstrate either the existence of the claimed error (e.g., *People v. Contreras* (2009) 177 Cal.App.4th 1296, 1301; *People v. Blackwood* (1983) 138 Cal.App.3d 939, 949) or that it was prejudicial. (See *People v. Hartsch* (2010) 49 Cal.4th 472, 504 ["even if such instructions properly pinpoint the theory of third party liability, their omission is not prejudicial because the reasonable doubt instructions give defendants ample opportunity to impress upon the jury that evidence of another party's liability must be considered in weighing whether the prosecution has met its burden of proof"].)

Defendant states his final contention as follows:  "Failure to relate third party defense to prosecution's burden of proof beyond a reasonable doubt was reversible error."  He reasons that CALCRIM No. 220, the standard instruction on reasonable doubt, "is adequate when the jury is reviewing the elements of the offense" charged, yet "is inadequate to inform the jury as to the burden applicable to affirmative defenses" and thus is inadequate when the jury is reviewing "a defense theory, especially one that points the finger at a third party . . . .  [¶]  . . . [¶]  [T]he failure to relate a theory of the defense to the burden of proof was critical to the outcome of this case.  The absence of any clarifying instruction on this key and ultimate issue" [misled the jury] "as to the prosecution's burden and the reasonable doubt standard."  This reasoning is flawed.

By conceding that CALCRIM No. 220 is legally correct, and that he is addressing "clarifying" instructions, defendant must confront the principle that " 'A party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' "  (*People v. Coddington* (2000) 23 Cal.4th 529, 603.)  And by implicitly treating  the matter as one within the trial court's sua sponte duties, defendant impliedly concedes he made no such request.

Moreover, although he does not mention it, defendant is talking about a "pinpoint" instruction, which comes with rules of its own:  "Under appropriate circumstances, 'a trial court may be required to give a requested jury instruction that pinpoints a defense theory of the case by, among other things, relating the reasonable doubt standard of proof

4

to particular elements of the crime charged.' " (*People v. Coffman and Marlow*, *supra*, 34 Cal.4th 1, 99.) "Even if proper, however, pinpoint instructions 'are not required to be given sua sponte.' " (*People v. Hughes* (2002) 27 Cal.4th 287, 361.) Which is a different way of concluding that it was up to defendant at his trial to raise the issue and propose appropriate instructions. This he did not do. Here too, without a proposed instruction before us, we cannot conclude that its substance was not covered by other instructions.

## DISPOSITION

The judgment of conviction is affirmed.


_____
Richman, J.


We concur:


_____
Kline, P.J.


_____
Miller, J.