Filed 8/24/21  P. v. Guerrero CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075851 |
| v. | (Super.Ct.No. RIF123125) |
| JUAN ANTONIO GUERRERO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed with directions.

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Meredith S. White and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Juan Antonio Guerrero, filed a petition for resentencing pursuant to Penal Code section 1170.95,[1] which the superior court summarily denied. On appeal, defendant contends the court erred in summarily denying his petition prior to issuing an order to show cause. We affirm with modifications.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

On April 10, 2005, Anthony Lopez was traveling on Mission Boulevard in his 1988 Cadillac and saw a friend, Richard Gutierrez, riding his bicycle near Mission Boulevard. Lopez stopped near Lee's Market, and Gutierrez came over to the driver's side window of Lopez's car to talk to him. A few minutes later, a car stopped quickly near them, and a man, later identified as defendant's son, Edwardo Guerrero, got out of the driver's seat of the vehicle. Edwardo approached Gutierrez and asked him, "'What the fuck is your problem?'" Edwardo then produced a handgun from his waistband and shot Gutierrez once in the arm. (*Guerrero*, *supra*, E041870.)

Gutierrez ran toward Lee's Market, and Edwardo chased after him and fired more shots at him. Gutierrez entered the market and tried to hold the glass door shut, but Edwardo fired a shot that shattered the glass door. Edwardo then entered the market and fired multiple shots at Gutierrez, changing the magazine in the gun at one point. Gutierrez was hit multiple times and died at the scene. (*Guerrero*, *supra*, E041870.)

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] By order dated April 6, 2021, we granted the People's request that we take judicial notice of the record in defendant's appeal from the judgment. (See *People v. Guerrero* (Feb. 22, 2008, E041870) [nonpub. opn.] (*Guerrero*).) (Evid. Code, § 459.)

After Edwardo entered the market, Lopez looked over at the car in which Edwardo had arrived and saw defendant sitting in the driver's seat. Lopez believed that defendant had slid over from the passenger seat to the driver's seat. While Edwardo was in the store, defendant warned Lopez that he better not leave. When Edwardo came out of the store and jumped into the passenger side of the car, Lopez, fearing that he might be the next victim, quickly pulled out of the parking lot. Defendant and Edwardo chased Lopez for a considerable distance at a high speed before Lopez lost them. (*Guerrero*, *supra*, E041870.)

On April 12, 2005, police arrested defendant and Edwardo. Defendant's defense was that he had been mistakenly identified as the driver of the getaway car. Alternatively, he claimed that if he was in the vehicle, he did not know his son Edwardo intended to shoot Gutierrez and that he only aided his son in escaping from the area after the offense had been committed. (*Guerrero*, *supra*, E041870.)

In support of the latter defense, defendant's counsel pointed to Lopez's testimony that defendant was in the passenger seat when they arrived at the market and argued that this indicated that he did not know what his son intended at that time. Defendant's counsel also noted that there was no evidence that he gave any aid to Edwardo, other than driving him away from the scene after the offense had been committed. (*Guerrero*, *supra*, E041870.)

On September 27, 2006, a jury found defendant guilty of first degree murder. (§ 187, subd. (a).) The superior court sentenced defendant to 25 years to life.

Defendant appealed his conviction contending the superior court prejudicially erred and violated his constitutional rights when it refused to instruct the jury on the elements of accessory after the fact and that his counsel was ineffective when counsel failed to request a pinpoint instruction concerning his defense theory that he was only an accessory after the fact. (*Guerrero*, *supra*, E041870.)

In rejecting defendant's contentions on appeal, this court noted that the jury was properly instructed on aiding and abetting. The jury was informed that an aider and abettor *must* have *knowledge* of the perpetrator's intent to commit the crime, that the defendant intended to aid and abet the perpetrator in committing the crime *before or during* the commission of the crime, and that the defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. (*Guerrero*, *supra*, E041870.)

On January 2, 2019, defendant filed a petition for resentencing pursuant to section 1170.95. The People filed a response based, in large part, on the purported unconstitutionality of section 1170.95. However, the People also alleged that defendant was not entitled to relief because he directly aided and abetted the killing with the intent to kill or was a major participant acting with reckless indifference to human life. In a reply, defendant's counsel argued that the evidence showed that defendant was not the actual killer and was convicted on a natural and probable consequences theory.

At the hearing on the petition, the superior court observed, "A review of the record in this case shows it was a two defendant case. [Defendant] was convicted of first-degree murder, sentenced to 25 years to life. The jury instructions do not include

4

felony murder or natural and probable [consequences] instructions. The 2008 appellate opinion in imaging shows he's not the shooter, but he was the getaway driver, and the theory was direct aiding and abetting." Defense counsel submitted, and the court summarily denied the petition.[3] Defense counsel lodged an objection for the record.

## II. DISCUSSION

Defendant contends the superior court erred in summarily denying his petition prior to issuing an order to show cause. We disagree.

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats 2018, ch. 1015, § 1, subd. (f).) In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

---

[3] The reporter's transcript reflects that the superior court summarily denied the petition. The minute order indicates the court dismissed the petition. We shall direct the court to correct the minute order. (See *People v. Jones* (2012) 54 Cal.4th 1, 89 [The minute order "'does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize.'"].) The reviewing court has the authority to correct clerical errors in the minute order. (*People v. Contreras* (2009) 177 Cal.App.4th 1296, 1300, fn. 3.)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' [Citations.] Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' (§ 1170.95, subd. (b)(1)(C).) If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.'" (*Lewis, supra*, 11 Cal.5th at pp. 959-960.)

"Where the petition complies with [section 1170.95,] subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief." (*Lewis, supra*, 11 Cal.5th at p. 960.) A court may rely on the record of conviction in determining whether a prima facie showing has been made. (*Id*. at p. 970.) "The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id*. at p. 971.) "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the

6

analogous prima facie inquiry in habeas corpus proceedings, "'the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause.'"" (*Ibid.*)

"'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "Appellate opinions . . . are generally considered to be part of the record of conviction." (*Id.* at p. 972.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Ibid.*) "In sum, the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under [section 1170.95,] subdivision (c)." (*Ibid.*)

In this case, the superior court denied defendant's petition at the prima facie stage under section 1170.95, subdivision (c). "A denial at that stage is appropriate only if the record of conviction demonstrates that 'the petitioner is ineligible for relief as a matter of law.' [Citations.] This is a purely legal conclusion, which we review de novo." (*People v. Murillo* (2020) 54 Cal.App.5th 160, 167, review granted Nov. 18, 2020, S264978; accord, *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1137, 1142, review granted Oct. 14, 2020, S264284.)

Here, after the superior court properly reviewed the jury instructions and this court's opinion from defendant's appeal from the judgment, it observed that the jury instructions did "not include felony murder or natural and probable [consequences] instructions." This expressly refuted the allegation in defendant's petition that he had been convicted under the theory of felony murder or murder under the natural and probable consequences doctrine. Thus, the superior court concluded that the theory upon which defendant was convicted was "direct aiding and abetting." The court's conclusion is correct.

The absence of instructions on the felony-murder rule or the natural and probable consequences doctrine means that the jury could only have convicted defendant as a direct aider and abettor of the killing acting with malice aforethought. Therefore, defendant was ineligible for section 1170.95 relief as a matter of law. (*People v. People v. Offley* (2020) 48 Cal.App.5th 588, 595-596 ["The change" in the law "did not, however, alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator.'"]; *People v. Smith* (2020) 49 Cal.App.5th 85, 92, fn. 5, review granted July 22, 2020, S262835 ["[I]f the jury was not instructed on a natural and probable consequences or felony-murder theory of liability, the petitioner could not demonstrate eligibility as a matter of law because relief is restricted to persons convicted under one of those two theories."]; *People v. Palacios* (2020) 58 Cal.App.5th 845, 857, review granted Feb. 24, 2021, S266701 ["[D]efendant's record of conviction shows that

8

he directly aided and abetted in the murder," rendering him ineligible for relief.].)  The superior court properly denied defendant's petition.

## III.  DISPOSITION

The order denying defendant's petition is affirmed.  The superior court clerk is directed to modify the August 21, 2020, minute order to reflect that the court denied, rather than dismissed, defendant's petition for resentencing.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____
                                        Acting P. J.

We concur:


SLOUGH _____
                        J.


MENETREZ _____
                        J.

9